**BORROWER:**

**WOODLAND LAKES INVESTMENT
GROUP, L.L.C.,**
a Michigan limited liability company

By:     WLA Management, Inc.,
        a Michigan corporation, its Manager

        By:_____
            Scott A. Chappelle, its President


STATE OF MICHIGAN          )
                           )
COUNTY OF INGHAM           )

On this 6th day of June, _____, 2008, before me, the undersigned, a notary
public within and for said County and State, personally appeared Scott A. Chappelle, to me
personally known, who being by me duly sworn, did state that he is the President of WLA
Management, Inc., a Michigan corporation, Manager of **WOODLAND LAKES
INVESTMENT GROUP, L.L.C.,** a Michigan limited liability, known to me to be the person
who executed the foregoing instrument on behalf of said limited liability company, and
acknowledged to me that he executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in
Ingham _____ County, State of Michigan _____, the day and year last above written.

_____
Notary Public

My commission expires:

4/15/2011

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of Ingham

**HARRISON INVESTMENT GROUP, L.L.C.,**
a Michigan limited liability company

By: _____
     Brent A. Titus, its Manager


STATE OF _MICHIGAN_ )
                                         )
COUNTY OF _INGHAM_ )

On this _12th_ day of _June_____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared Brent A. Titus, to me personally known, who being by me duly sworn, did state that he is the authorized Manager of **HARRISON INVESTMENT GROUP, L.L.C.**, a Michigan limited liability company, known to me to be the person who executed the foregoing instrument on behalf of said limited liability company, and acknowledged to me that he executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_____ County, State of _Michigan_ the day and year last above written.

                                                    _____
                                                    Notary Public

My commission expires:

_____

JOYCE A. MILLER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires Nov. 2, 2014
Acting in the County of Ingham

_____
**SHAWN O'BRIEN**


STATE OF Michigan )
                                        )
COUNTY OF Clinton )


On this 12 day of June _____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared **SHAWN O'BRIEN**, to me personally known, who being by me duly sworn, acknowledged to me that he executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in Clinton _____ County, State of Michigan , the day and year last above written.


_____
Notary Public

My commission expires:

July 8, 2014

ARICYN R. THOMPSON
NOTARY PUBLIC · STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires July 8, 2014
Acting in the County of Clinton

FRANK R. VARGAS, JR.

STATE OF _MICHIGAN_ )
)
COUNTY OF _INGHAM_ )

    On this _18th_ day of _June_, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared **FRANK R. VARGAS, JR.**, to me personally known, who being by me duly sworn, acknowledged to me that he executed the same for the purposes therein stated.

    In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_ County, State of _Michigan_, the day and year last above written.

Notary Public

My commission expires:
_4/15/2011_

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of _Ingham_

**COVENANT INVESTMENT GROUP, INC.**
a Michigan corporation

By: _Laura A. Chappelle_

Laura A. Chappelle, its President

STATE OF _MICHIGAN_ )

                             )

COUNTY OF _INGHAM_ )

On this _6th_ day of _June_____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared Laura A. Chappelle, to me personally known, who being by me duly sworn, did state that she is the President of **COVENANT INVESTMENT GROUP, INC.**, a Michigan corporation, known to me to be the person who executed the foregoing instrument on behalf of said corporation, and acknowledged to me that she executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_____ County, State of _Michigan_____, the day and year last above written.

_Julia L. Skinner_

Notary Public

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of _Ingham_

My commission expires:

_4 / 15 / 2011_

**KTM DEVELOPMENT CORPORATION,**
a Michigan corporation

By: _____
Kevin T. McGraw, its President


STATE OF _MICHIGAN_ )
)
COUNTY OF _INGHAM_ )

On this 6th day of _June_____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared Kevin T. Mcgraw, to me personally known, who being by me duly sworn, did state that he is the President of **KTM DEVELOPMENT CORPORATION**, a Michigan corporation, known to me to be the person who executed the foregoing instrument on behalf of said corporation, and acknowledged to me that he executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_____ County, State of _Michigan_ the day and year last above written.

_____
Notary Public.

My commission expires:

_4/15/2011_

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of _Ingham_

_(signature)_

**CHARLES W. CROUCH**

STATE OF _MICHIGAN_ )
                     )
COUNTY OF _INGHAM_ )

    On this _12th_ day of _June_ , 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared **CHARLES W. CROUCH**, to me personally known, who being by me duly sworn, acknowledged to me that he executed the same for the purposes therein stated.

    In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_ County, State of _Michigan_ , the day and year last above written.

_(signature)_
Notary Public

My commission expires:

_2/17/15_

A. RICHTER
NOTARY PUBLIC-STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires Feb. 17, 2015
Acting in County of Ingham

**BRENT CHAPPELLE**

STATE OF _MICHIGAN_ )
                                          )
COUNTY OF _INGHAM_ )

On this _10th_ day of _June_____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared **BRENT CHAPPELLE**, to me personally known, who being by me duly sworn, acknowledged to me that he executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_____ County, State of _Michigan_, the day and year last above written.

Notary Public

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of _Ingham_

**TMC INVESTMENT GROUP, L.L.C.,**
a Michigan limited liability company

By:  Terra Management Company,
     a Michigan corporation,
     its Manager

By: _____
      Scott A. Chappelle, its President


STATE OF _MICHIGAN_ )
                   )
COUNTY OF _INGHAM_ )

     On this _6th_ day of _June_____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared Scott A. Chappelle, to me personally known, who being by me duly sworn, did state that he is the President of Terra Management Company, a Michigan corporation, Manager of TMC INVESTMENT GROUP, L.L.C., a Michigan limited liability, known to me to be the person who executed the foregoing instrument on behalf of said limited liability company, and acknowledged to me that he executed the same for the purposes therein stated.

     In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_____ County, State of _Michigan_, the day and year last above written.

                  _____
                  Notary Public

My commission expires:

_4 | 15 | 2011_

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of Ingham

**ALLIANCE INVESTMENT GROUP, L.L.C.,**
a Michigan limited liability company

By: Terra Management Company,
    a Michigan corporation,
    its Manager

By: _____
    Scott A. Chappelle, its President

STATE OF MICHIGAN )
                           )
COUNTY OF INGHAM )

On this 6th day of June _____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared Scott A. Chappelle, to me personally known, who being by me duly sworn, did state that he is the President of Terra Management Company, a Michigan corporation, Manager of **ALLIANCE INVESTMENT GROUP, L.L.C.,** a Michigan limited liability company, known to me to be the person who executed the foregoing instrument on behalf of said limited liability company, and acknowledged to me that he executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_ County, State of _Michigan_, the day and year last above written.

_____
Notary Public

My commission expires:

_4/15/2011_

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of _____

**ABBOTT ROAD COMMONS, L.L.C.,**
a Michigan limited liability company

By: Terra Management Company,
    a Michigan corporation,
    its Manager

By: _____
       Scott A. Chappelle, its President

STATE OF _M1CH1GAN_  )
                                             )
COUNTY OF _INGHAM_   )

On this _6th_ day of _June_____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared Scott A. Chappelle, to me personally known, who being by me duly sworn, did state that he is the President of Terra Management Company, a Michigan corporation, Manager of **ABBOTT ROAD COMMONS, L.L.C.,** a Michigan limited liability company, known to me to be the person who executed the foregoing instrument on behalf of said limited liability company, and acknowledged to me that he executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_ County, State of _Michigan_, the day and year last above written.

_____
Notary Public

My commission expires:

_4/15/2011_

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of _____

**CHASCO INVESTMENT PROPERTIES, L.L.C.,**
a Michigan limited liability company

By:  Terra Management Company,
a Michigan corporation,
its Manager

By:  _____
Scott A. Chappelle, its President


STATE OF _MICHIGAN_ )
)
COUNTY OF _INGHAM_ )

    On this _6th_ day of _June_____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared Scott A. Chappelle, to me personally known, who being by me duly sworn, did state that he is the President of Terra Management Company, a Michigan corporation, Manager of **CHASCO INVESTMENT PROPERTIES, L.L.C.,** a Michigan limited liability company, known to me to be the person who executed the foregoing instrument on behalf of said limited liability company, and acknowledged to me that he executed the same for the purposes therein stated.

    In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_ County, State of _Michigan_, the day and year last above written.

_____
Notary Public

My commission expires:

_4 | 15 | 2011_

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of _Ingham_

**EVERGREEN INVESTMENT GROUP, L.L.C.,**
a Michigan limited liability company

By:  Terra Management Company,
     a Michigan corporation,
     its Manager

     By: _____
         Scott A. Chappelle, its President


STATE OF _MICHIGAN_ )
                     )
COUNTY OF _INGHAM_   )

    On this 6th day of _June_____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared Scott A. Chappelle, to me personally known, who being by me duly sworn, did state that he is the President of Terra Management Company, a Michigan corporation, Manager of **EVERGREEN INVESTMENT GROUP, L.L.C.,** known to me to be the person who executed the foregoing instrument on behalf of said limited liability company and acknowledged to me that he executed the same for the purposes therein stated.

    In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_____ County, State of _Michigan_ the day and year last above written.

                      _____
                      Notary Public

                         JULIA L. SKINNER
                  NOTARY PUBLIC - STATE OF MICHIGAN
                    COUNTY OF INGHAM
My commission expires:     My Commission Expires April 15, 2011
                  Acting in the County of Ingham
4/15/2011

**GRAND LEDGE INVESTMENT GROUP, L.L.C.,**
a Michigan limited liability company

By:  Terra Management Company,
     a Michigan corporation,
     its Manager

By: _____
     Scott A. Chappelle, its President

STATE OF Michigan )
                  )
COUNTY OF INGHAM  )

On this 6th day of June_____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared Scott A. Chappelle, to me personally known, who being by me duly sworn, did state that he is the President of Terra Management Company, a Michigan corporation, Manager of **GRAND LEDGE INVESTMENT GROUP, L.L.C.,** a Michigan limited liability company, known to me to be the person who executed the foregoing instrument on behalf of said limited liability company, and acknowledged to me that he executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in Ingham_____ County, State of Michigan , the day and year last above written.

_____
Notary Public

My commission expires:

4/15/2011

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of Ingham

**SLHA INVESTMENT GROUP, L.L.C.,**
a Michigan limited liability company

By: Terra Management Company,
   a Michigan corporation,
   its Manager

By: _____
   Scott A. Chappelle, its President


STATE OF _Michigan_ )
                    )
COUNTY OF _Ingham_  )

   On this _6th_ day of _June_ _____, 2008, before me, the undersigned, a notary
public within and for said County and State, personally appeared Scott A. Chappelle, to me
personally known, who being by me duly sworn, did state that he is the President of Terra
Management Company, a Michigan corporation, Manager of **SLHA INVESTMENT GROUP,
L.L.C.,** a Michigan limited liability company, known to me to be the person who executed the
foregoing instrument on behalf of said limited liability company, and acknowledged to me that
he executed the same for the purposes therein stated.

   In witness whereof, I have set my hand and affixed my official seal at my office in
_Ingham_ County, State of _Michigan_, the day and year last above written.

_____
Notary Public

My commission expires:

_4 / 15 / 2011_

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of Ingham

**PETOSKEY INVESTMENT GROUP, L.L.C.,**
a Michigan limited liability company

By:  Terra Management Company,
     a Michigan corporation,
     its Manager

    By: _____
         Scott A. Chappelle, its President


STATE OF _MICHIGAN_ )
                 )
COUNTY OF _INGHAM_ )

    On this _8th_ day of _June_____, 2008, before me, the undersigned, a notary
public within and for said County and State, personally appeared Scott A. Chappelle, to me
personally known, who being by me duly sworn, did state that he is the President of Terra
Management Company, a Michigan corporation, Manager of **PETOSKEY INVESTMENT
GROUP, L.L.C.,** a Michigan limited liability company, known to me to be the person who
executed the foregoing instrument on behalf of said limited liability company, and acknowledged
to me that he executed the same for the purposes therein stated.

    In witness whereof, I have set my hand and affixed my official seal at my office in
_Ingham_____ County, State of _Michigan_, the day and year last above written.

                             _____
                             Notary Public

My commission expires:

_4/15/2011_

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires Apr 15, 2011
Acting in the County of Ingham

**SCORE PROPERTIES, INC.,**
a Michigan corporation

By: _Laura A. Chappelle_
Laura A. Chappelle, its President

STATE OF _MICHIGAN_ )
                              )
COUNTY OF _INGHAM_ )

On this _6th_ day of _June_ , 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared Laura A. Chappelle, to me personally known, who being by me duly sworn, did state that she is the President of **SCORE PROPERTIES, INC.**, a Michigan corporation, known to me to be the person who executed the foregoing instrument on behalf of said corporation, and acknowledged to me that she executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_ County, State of _Michigan_ the day and year last above written.

_____
Notary Public
JULIA L. SKINNER
NOTARY PUBLIC · STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires Apr-15, 2011
Acting in the County of Ingham

My commission expires:

_4/15/2011_

**TERRA MANAGEMENT COMPANY,**
a Michigan corporation

By: _____
    Scott A. Chappelle, its President


STATE OF _MICHIGAN_ )
                       )
COUNTY OF _INGHAM_ )

On this _5th_ day of _June_____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared Scott A. Chappelle, to me personally known, who being by me duly sworn, did state that he is the President of **TERRA MANAGEMENT COMPANY**, a Michigan corporation, known to me to be the person who executed the foregoing instrument on behalf of said corporation, and acknowledged to me that he executed the same for the purposes therein stated.

    In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_____ County, State of _Michigan____, the day and year last above written.

                        _____
                        Notary Public

My commission expires:

_4/15/2011_____

                    **JULIA L. SKINNER**
           NOTARY PUBLIC - STATE OF MICHIGAN
               COUNTY OF INGHAM
         My Commission Expires April 15, 2011
        Acting in the County of _Ingham_

**WLA MANAGEMENT, INC.,**
a Michigan corporation

By: _____

Scott A. Chappelle, its President

STATE OF _MICHIGAN_ )
)
COUNTY OF _INGXHM_ )

On this _6th_ day of _June_____, 2008, before me, the undersigned, a notary
public within and for said County and State, personally appeared Scott A. Chappelle, to me
personally known, who being by me duly sworn, did state that he is the President of **WLA
MANAGEMENT, INC.**, a Michigan corporation, known to me to be the person who executed
the foregoing instrument on behalf of said corporation, and acknowledged to me that he executed
the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in
_Ingham_____ County, State of _Michigan____, the day and year last above written.

_____
Notary Public

JULIA L. SKINNER
NOTARY PUBLIC STATE OF MICHIGAN
OF INGHAM
My Com... Expires April 15, 2011
Acting in the County of Ingham

My commission expires:

_4|15|2011_

**GUARANTORS:**

SCOTT A. CHAPPELLE

STATE OF _MICHIGAN_ )
)
COUNTY OF _INGHAM_ )

On this _6th_ day of _June_ _____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared **SCOTT A. CHAPPELLE**, to me personally known, who being by me duly sworn, acknowledged to me that he executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_ County, State of _Michigan_, the day and year last above written.

Notary Public

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of _Ingham_

My commission expires:

_4/15/2011_

_Laura A. Chappelle_

**LAURA A. CHAPPELLE**

STATE OF MICHIGAN )
　　　　　　　　　　 )
COUNTY OF INGHAM )

　　　On this 6th day of June _____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared **LAURA A. CHAPPELLE**, to me personally known, who being by me duly sworn, acknowledged to me that she executed the same for the purposes therein stated.

　　　In witness whereof, I have set my hand and affixed my official seal at my office in
Ingham _____ County, State of Michigan, the day and year last above written.

_Julia L. Skinner_
Notary Public

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of Ingham

My commission expires:

　4/15/2011

**KEVIN T. McGRAW**

STATE OF MICHIGAN )

COUNTY OF INGHAM )

On this 6th day of June , 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared **KEVIN T. McGRAW**, to me personally known, who being by me duly sworn, acknowledged to me that he executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in Ingham County, State of Michigan , the day and year last above written.

Notary Public

My commission expires:

4/15/2011

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of

_____

**SHARON D. McGRAW**

STATE OF MICHIGAN )
                           )
COUNTY OF INGHAM )

On this 6th day of June _____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared **SHARON D. McGRAW**, to me personally known, who being by me duly sworn, acknowledged to me that she executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in Ingham County, State of Michigan, the day and year last above written.

_____
Notary Public

My commission expires:

4/15/2011

JULIA L. SKINNER
NOTARY PUBLIC · STATE OF MICHIGAN
My Com. ____ ____ 15, 2011
Acting in the County of Ingham

EVERT KRAMER, JR.

STATE OF MICHIGAN ⟩
⟩
COUNTY OF INGHAM ⟩

On this 6th day of June , 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared **EVERT KRAMER, JR.**, to me personally known, who being by me duly sworn, acknowledged to me that he executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in Ingham County, State of Michigan , the day and year last above written.

Notary Public

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of Ingham

My commission expires:

4/15/2011

*Rosalind Kramer*

**ROSALIND KRAMER**

STATE OF MICHIGAN )
                     )
COUNTY OF INGHAM )

    On this 6th day of June_____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared **ROSALIND KRAMER**, to me personally known, who being by me duly sworn, acknowledged to me that she executed the same for the purposes therein stated.

    In witness whereof, I have set my hand and affixed my official seal at my office in Ingham_____ County, State of Michigan, the day and year last above written.

Notary Public

        **JULIA L. SKINNER**
     **NOTARY PUBLIC - STATE OF MICHIGAN**
        **COUNTY OF INGHAM**
    My Commission Expires April 15, 2011
    Acting in the County of _____

My commission expires:
4/15/2011

EXHIBIT A

PLEDGORS

Harrison Investment Group, L.L.C., a Michigan limited liability company ✝
Shawn O'Brien
Frank R. Vargas, Jr.
Covenant Investment Group, Inc., a Michigan corporation
KTM Development Corporation, a Michigan corporation *
Charles W. Crouch
Brent Chappelle
TMC Investment Group, L.L.C., a Michigan limited liability company
Alliance Investment Group, L.L.C., a Michigan limited liability company
Masonic Investment Group, L.L.C., a Michigan limited liability company **
Abbott Road Commons, L.L.C., a Michigan limited liability company
Chasco Investment Properties, L.L.C., a Michigan limited liability company
Evergreen Investment Group, L.L.C., a Michigan limited liability company
Grand Ledge Investment Group, L.L.C., a Michigan limited liability company
SLHA Investment Group, L.L.C., a Michigan limited liability company
Petoskey Investment Group, L.L.C., a Michigan limited liability company
Score Properties, Inc., a Michigan corporation
Terra Management Company, a Michigan corporation
WLA Management, Inc., a Michigan corporation

**Was originally a Pledgor, but is not a Pledgor as of the date of this Agreement

* KTM Development Corporation transferred its
interest to Pledgor Alliance Investment Group, L.L.C.

✝ Harrison Investment Group, L.L.C. transferred 5%
interest to Pledgor Covenant Investment Group, Inc.

EXHIBIT A

EXHIBIT B

2008 OPERATING BUDGET

[CONTAINED ON NEXT PAGE]

EXHIBIT B

**WOODLAND LAKES INVESTMENT GROUP LLC**

**12 Month Actual to Budget**

Period = Jan 2008-Mar 2008

Book = Accrual

| | | Jan-08 | Feb-08 | Mar-08 | Apr-08 | May-08 | Jun-08 | Jul-08 | Aug-08 | Sep-08 | Oct-08 | Nov-08 | Dec-08 | Total Actual+Budget | Original Budget | Variance | % Variance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INCOME | 4001-0000 | | | | | | | | | | | | | | | | |
| RENT INCOME | 4405-0000 | | | | | | | | | | | | | | | | |
| MARKET RENT | 4406-0000 | | | | | | | | | | | | | | | | |
| GROSS POTENTIAL RENT | 4410-0000 | 307,972.40 | 307,945.00 | 307,945.00 | 307,500.00 | 307,500.00 | 307,500.00 | 307,500.00 | 307,500.00 | 307,500.00 | 307,500.00 | 307,500.00 | 307,500.00 | 3,691,362.40 | 3,690,000.00 | 1,362.40 | 0.04 |
| LOSS/GAIN TO LEASE | 4420-0000 | 11,472.86 | 5,914.00 | 12,830.13 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 61,714.99 | 42,000.00 | 19,714.99 | 46.94 |
| MARKET RENT | 4499-9999 | 319,443.36 | 313,859.00 | 320,775.13 | 311,000.00 | 311,000.00 | 311,000.00 | 311,000.00 | 311,000.00 | 311,000.00 | 311,000.00 | 311,000.00 | 311,000.00 | 3,753,077.39 | 3,732,000.00 | 21,077.39 | 0.56 |
| RENT | 4510-0000 | 0.00 | 0.00 | -975.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -975.00 | 0.00 | -975.00 | 0.00 |
| LESS: CONCESSIONS | 4515-0000 | -47,843.45 | -44,760.96 | -51,848.38 | -40,000.00 | -40,000.00 | -40,000.00 | -40,000.00 | -45,000.00 | -40,000.00 | -40,000.00 | -60,000.00 | -60,000.00 | -493,492.79 | -705,000.00 | 11,507.21 | -1.63 |
| LESS: DELINQUENCY | 4520-0000 | -1,370.00 | -1,370.00 | 0.00 | -2,500.00 | -2,500.00 | -2,500.00 | -2,500.00 | -2,500.00 | -1,500.00 | -2,500.00 | -2,500.00 | -2,500.00 | -25,240.00 | -30,000.00 | 4,760.00 | -15.87 |
| LESS: VACANCY | 4525-0000 | -23,861.71 | -20,881.88 | -22,410.31 | -28,000.00 | -26,000.00 | -25,000.00 | -28,000.00 | -30,000.00 | -28,000.00 | -28,000.00 | -30,000.00 | -30,000.00 | -320,153.90 | -334,000.00 | 13,846.10 | -4.15 |
| LOSS FROM MODEL | 4540-0000 | -1,830.00 | -1,830.00 | -1,830.00 | -1,830.00 | -1,830.00 | -1,830.00 | -1,830.00 | -1,830.00 | -1,830.00 | -1,830.00 | -1,830.00 | -1,830.00 | -21,960.00 | -21,960.00 | 0.00 | 0.00 |
| NET UNIT RENT INCOME | 4599-9999 | 244,538.10 | 241,016.16 | 243,671.44 | 218,670.00 | 220,670.00 | 221,670.00 | 218,670.00 | 213,670.00 | 218,670.00 | 218,670.00 | 216,670.00 | 216,670.00 | 2,891,255.70 | 2,841,040.00 | 50,215.70 | 1.90 |
| OTHER RENT AND ANCILLARY FEES | 4600-0000 | | | | | | | | | | | | | | | | |
| APPLICATION/AMENITY FEE | 4605-0000 | 1,200.00 | 1,000.00 | 800.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 9,750.00 | 9,000.00 | 750.00 | 8.33 |
| PET FEES | 4610-0000 | 3,688.46 | 2,117.99 | 3,542.40 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 1,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 37,548.87 | 36,000.00 | 1,548.87 | 4.30 |
| GARAGE/PARKING INCOME | 4615-0000 | 2,611.30 | 2,471.29 | 2,504.42 | 2,333.33 | 2,333.33 | 2,333.33 | 2,333.33 | 2,333.33 | 2,333.33 | 2,333.33 | 2,333.33 | 2,333.37 | 28,587.02 | 28,000.00 | 587.02 | 2.10 |
| TERMINATION - NOTICE INCOME | 4616-0000 | 2,300.00 | 0.00 | 0.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,800.00 | 6,000.00 | 800.00 | 13.33 |
| LATE CHARGES/NSF FEES | 4620-0000 | 1,733.47 | -487.90 | 460.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 8,430.47 | 9,000.00 | -569.53 | -6.33 |
| INTERNET SERVICE INCOME | 4625-0000 | 7,256.08 | 6,845.10 | 7,062.82 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 75,264.00 | 72,000.00 | 3,264.00 | 4.53 |
| TV SERVICE INCOME | 4630-0000 | 11,083.97 | 10,866.82 | 11,193.43 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 8,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 114,141.22 | 108,000.00 | 6,141.22 | 5.69 |
| COLLECTIONS RECOVERY INCOME | 4632-0000 | 506.52 | 0.00 | 0.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,306.52 | 2,400.00 | -93.48 | -3.90 |
| MISCELLANEOUS INCOME | 4635-0000 | 305.00 | 1,045.00 | 75.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 3,225.00 | 2,400.00 | 825.00 | 34.38 |
| TOTAL OTHER RENT AND ANCILLARY FEES | 4649-9999 | 29,981.82 | 25,833.20 | 25,438.07 | 22,733.33 | 22,733.33 | 22,733.33 | 22,733.33 | 22,733.33 | 22,733.33 | 22,733.33 | 22,733.33 | 22,733.37 | 286,053.10 | 272,800.00 | 13,253.10 | 4.86 |
| MULTI-FAMILY PASS THRU RECOVERIES | 4650-0000 | | | | | | | | | | | | | | | | |
| WATER & SEWER PASS THRU | 4651-0000 | 12,239.20 | 8,770.02 | 10,924.16 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 112,933.38 | 108,000.00 | 4,933.38 | 4.57 |
| REPAIR & MAINTENANCE PASS THRU | 4653-0000 | 0.00 | 0.00 | 0.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 2,250.00 | 3,000.00 | -750.00 | -25.00 |
| DAMAGES | 4655-0000 | 1,411.49 | 0.00 | 0.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 10,411.49 | 12,000.00 | -1,588.51 | -13.24 |
| TOTAL MULTI-FAMILY PASS THRU RECOVERIES | 4659-9999 | 13,650.69 | 8,770.02 | 10,924.16 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 125,594.87 | 123,000.00 | 2,594.87 | 2.11 |
| TOTAL INCOME MULTI-FAMILY | 4699-9999 | 288,170.61 | 275,619.38 | 290,233.67 | 251,653.33 | 253,653.33 | 254,653.33 | 251,653.33 | 246,653.33 | 251,653.33 | 251,653.33 | 249,653.33 | 249,653.37 | 3,102,903.67 | 3,036,840.00 | 66,063.67 | 2.18 |
| NON-OPERATING INCOME | 4850-0000 | | | | | | | | | | | | | | | | |

EXHIBIT B

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OTHER INCOME | 4865-0000 | 0.00 | 142,967.38 | 0.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 45,000.00 | 250.00 | 250.00 | 250.00 | 189,967.38 | 190,500.00 | -532.62 | -0.28 |
| TOTAL NON-OPERATING INCOME | 4870-9999 | 0.00 | 142,967.38 | 0.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 45,000.00 | 250.00 | 250.00 | 250.00 | 189,967.38 | 190,500.00 | -532.62 | -0.28 |
| TOTAL INCOME | 4999-9999 | 288,170.61 | 418,586.78 | 280,233.67 | 251,903.33 | 253,903.33 | 254,903.33 | 251,903.33 | 244,903.33 | 296,653.33 | 251,903.33 | 249,903.33 | 249,903.37 | 3,292,871.05 | 3,227,340.00 | 65,531.05 | 2.03 |
| EXPENSES | 5000-0000 | | | | | | | | | | | | | | | | |
| MULTI-FAMILY-CONTRACT REPAIR & MAINT | 6710-0000 | | | | | | | | | | | | | | | | |
| CONTRACT-LANDSCAPING | 6714-0000 | 0.00 | 0.00 | 0.00 | 7,000.00 | 7,000.00 | 7,000.00 | 6,000.00 | 5,000.00 | 7,000.00 | 7,000.00 | 2,000.00 | 0.00 | 48,000.00 | 48,000.00 | 0.00 | 0.00 |
| CONTRACT-EXTERMINATION | 6715-0000 | 245.00 | 0.00 | 0.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 2,495.00 | 3,000.00 | 505.00 | 16.83 |
| CONTRACT-SNOW REMOVAL | 6717-8007 | 5,380.55 | 14,575.12 | 7,033.85 | 1,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,000.00 | 6,000.00 | 38,389.52 | 34,000.00 | -4,389.52 | -12.91 |
| TOTAL MULTI-FAMILY-CONTRACT REPAIR & MAINT | 6719-9999 | 5,625.55 | 14,575.12 | 7,033.85 | 8,250.00 | 7,250.00 | 7,250.00 | 6,250.00 | 5,250.00 | 7,250.00 | 7,250.00 | 6,250.00 | 6,250.00 | 88,884.52 | 85,000.00 | -3,884.52 | -4.57 |
| MULTI-FAMILY-NON CONTRACT REP & MAINT | 6720-0000 | | | | | | | | | | | | | | | | |
| APLIANCE REPAIR | 6721-0000 | 589.93 | 901.16 | 778.12 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 13,069.21 | 14,400.00 | 1,330.79 | 9.24 |
| CLEANING | 6722-0000 | 4,841.41 | 3,406.06 | 3,718.63 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 47,966.10 | 48,000.00 | 33.90 | 0.07 |
| CARPETING & FLOORING | 6723-0000 | 19.00 | 0.00 | 27.25 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 15,796.25 | 21,000.00 | 5,203.75 | 24.78 |
| ELECTRICAL REPAIR | 6724-0000 | 615.15 | 392.29 | 452.70 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 10,460.14 | 12,000.00 | 1,539.86 | 12.83 |
| HVAC REPAIR & MAINTENANCE | 6725-0000 | 230.14 | 81.25 | 571.61 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 12,133.00 | 15,000.00 | 2,867.00 | 19.11 |
| PLUMBING REPAIR | 6726-0000 | 730.50 | 596.96 | 936.51 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 9,013.97 | 9,000.00 | -13.97 | -0.16 |
| FIRE SAFETY | 6727-0000 | 81.25 | 0.00 | 289.48 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 4,870.73 | 6,000.00 | 1,129.27 | 18.82 |
| WALLS AND DOORS | 6728-0000 | 430.62 | 571.63 | 363.59 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 14,865.84 | 18,000.00 | 3,134.16 | 17.41 |
| WINDOWS AND SCREENS | 6729-0000 | 65.00 | 106.43 | 29.50 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,000.93 | 2,400.00 | 399.07 | 16.63 |
| PAINTING INTERIOR | 6730-0000 | 78.23 | 0.00 | 0.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 9,078.23 | 12,000.00 | 2,921.77 | 24.35 |
| PAINTING EXTERIOR | 6731-0000 | 0.00 | 0.00 | 0.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 2,250.00 | 3,000.00 | 750.00 | 25.00 |
| EXTERIOR REPAIR | 6732-0000 | 167.00 | 0.00 | 52.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 2,469.00 | 3,000.00 | 531.00 | 17.70 |
| PARKING LOT GROUNDS CLEANING | 6733-0000 | 2,889.00 | 32.68 | 1,044.38 | 800.00 | 800.00 | 800.00 | 600.00 | 800.00 | 800.00 | 800.00 | 500.00 | 600.00 | 10,666.06 | 11,000.00 | 333.94 | 3.04 |
| POOL MAINTENANCE | 6734-0000 | 0.00 | 0.00 | 0.00 | 500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,000.00 | 750.00 | 250.00 | 0.00 | 8,500.00 | 8,500.00 | 0.00 | 0.00 |
| TURNOVER EXPENSE | 6735-0000 | 3,229.00 | 1,089.50 | 2,712.75 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 25,031.25 | 24,000.00 | -1,031.25 | -4.30 |
| EQUIPMENT REPAIR & MAINTENANCE | 6736-0000 | 12.50 | 608.68 | 0.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 2,871.18 | 3,000.00 | 128.82 | 4.29 |
| PEST CONTROL NON-CONTRACT | 6738-0000 | 75.00 | 245.00 | 245.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 1,690.00 | 1,500.00 | -190.00 | -12.67 |
| OTHER REPAIRS AND MAINTENANCE | 6739-0008 | 212.50 | 23.64 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 236.14 | 0.00 | -236.14 | 0.00 |
| TOTAL MULTI-FAMILY-NON CONTRACT REP & MAINT | 6740-9999 | 14,266.23 | 8,055.28 | 11,221.52 | 17,325.00 | 18,325.00 | 18,325.00 | 18,325.00 | 18,325.00 | 17,825.00 | 17,575.00 | 16,775.00 | 16,625.00 | 192,968.03 | 211,800.00 | 18,831.97 | 8.89 |
| MULTI-FAMILY MARKETING & LEASING | 6741-0000 | | | | | | | | | | | | | | | | |
| MARKETING & LEASING-AVERTISING | 6742-0000 | 10,833.12 | 1,617.27 | 1,421.19 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 31,871.58 | 24,000.00 | -7,871.58 | -32.80 |
| MARKETING & LEASING-LOCATORS & REFERRALS | 6743-0000 | 2,377.00 | 1,167.00 | 28.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 21,572.00 | 24,000.00 | 2,428.00 | 10.12 |
| MARKETING & LEASING- OFFICE EXPENSE | 6744-0000 | 9,299.39 | 12,235.92 | 11,422.96 | 9,000.00 | 9,000.00 | 9,000.00 | 14,000.00 | 9,000.00 | 9,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 121,958.27 | 121,000.00 | -958.27 | -0.79 |
| MARKETING & LEASING-OTHER | 6745-0000 | 0.00 | 76.30 | 0.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,876.30 | 2,400.00 | 523.70 | 21.82 |
| MARKETING & LEASING-PROMO | 6746-0000 | 0.00 | 0.00 | 0.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,800.00 | 2,400.00 | 600.00 | 25.00 |
| TOTAL MULTI-FAMILY MARKETING & LEASING | 6749-9999 | 22,509.51 | 15,096.49 | 12,872.15 | 13,400.00 | 13,400.00 | 13,400.00 | 18,400.00 | 13,400.00 | 13,400.00 | 14,400.00 | 14,400.00 | 14,400.00 | 179,078.15 | 173,800.00 | -5,278.15 | -3.04 |

EXHIBIT B

| Account | No. | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MULTI-FAMILY-REPLACEMENT RESERVE | 6755-9999 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| MULTI-FAMILY-ADMINISTRATIVE | 6759-0000 | | | | | | | | | | | | | | | | |
| MANAGEMENT FEE | 6760-0000 | 10,023.53 | 8,470.63 | 8,564.54 | 8,066.67 | 8,066.67 | 8,066.67 | 8,066.67 | 8,066.67 | 8,066.67 | 8,066.67 | 8,066.67 | 8,066.63 | 99,658.69 | 96,800.00 | -2,858.69 | -2.95 |
| MANAGER FEE | 6761-0000 | 3,750.00 | 3,750.00 | 3,750.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 56,250.00 | 56,250.00 | 0.00 | 0.00 |
| OFFICE EXPENSE | 6762-0000 | 24.00 | 63.72 | 0.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 4,587.72 | 6,000.00 | 1,412.28 | 23.54 |
| OFFICE EQUIPMENT RENTAL & MAINTENANCE | 6764-0000 | 483.34 | 428.75 | 241.97 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,754.66 | 4,800.00 | 45.34 | 0.94 |
| TELEPHONE OFFICE | 6766-0000 | 784.71 | 561.62 | 505.61 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 7,251.94 | 7,200.00 | -51.94 | -0.72 |
| INTERNET SERVICES | 6767-0000 | 2,393.98 | 2,408.41 | 991.36 | 1,931.00 | 1,931.00 | 1,931.00 | 1,931.00 | 1,931.00 | 1,931.00 | 1,931.00 | 1,931.00 | 1,931.00 | 23,172.75 | 23,172.00 | -0.75 | 0.00 |
| TV SERVICE EXPENSE | 6768-0000 | 9,433.63 | 4,027.63 | 815.38 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 54,776.64 | 54,000.00 | -776.64 | -1.44 |
| PROFESSIONAL FEES - OPERATING | 6770-0000 | 0.00 | 0.00 | 0.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 7,200.00 | 9,600.00 | 2,400.00 | 25.00 |
| FILING FEES | 6771-0000 | 0.00 | 0.00 | 0.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 450.00 | 600.00 | 150.00 | 25.00 |
| INSURANCE UMBRELLA | 6775-0000 | 0.00 | 1,500.00 | 0.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 2,625.00 | 1,500.00 | -1,125.00 | -75.00 |
| POSTAGE-MAILING | 6780-0000 | 231.56 | 41.33 | 143.43 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 1,765.32 | 1,800.00 | 34.68 | 1.93 |
| BANK FEES AND CHARGES | 6781-0000 | 279.27 | 457.25 | 502.96 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,839.50 | 4,800.00 | -39.50 | -0.82 |
| UNIFORM EXPENSE | 6785-0000 | 52.30 | 9.97 | -4.43 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 732.84 | 900.00 | 167.16 | 18.57 |
| VEHICLE EXPENSE | 6786-0000 | 239.20 | 298.85 | 355.38 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 3,143.43 | 3,000.00 | -143.43 | -4.78 |
| TOTAL MULTI-FAMILY-ADMINISTRATIVE | 6789-9999 | 27,698.12 | 22,018.16 | 15,866.22 | 22,847.67 | 22,847.67 | 22,847.67 | 22,847.67 | 22,847.67 | 22,847.67 | 22,847.67 | 22,847.67 | 22,847.63 | 271,208.49 | 270,422.00 | -786.49 | -0.29 |
| MULTI-FAMILY UTILITIES | 6790-0000 | | | | | | | | | | | | | | | | |
| ELECTRIC | 6791-8000 | 2,024.46 | 4,094.79 | 4,374.41 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 32,990.66 | 30,000.00 | -2,990.66 | -9.97 |
| GAS | 6792-0000 | 1,934.38 | 2,340.12 | 1,873.44 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 15,167.94 | 12,000.00 | -3,167.94 | -26.40 |
| WATER-SEWER | 6793-0000 | 20,066.65 | 12,570.55 | 5,522.25 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 157,059.45 | 156,000.00 | -1,059.45 | -0.68 |
| WATER-IRRIGATION | 6794-0000 | 0.00 | 0.00 | 0.00 | 0.00 | 800.00 | 2,000.00 | 3,000.00 | 6,000.00 | 2,000.00 | 2,000.00 | 0.00 | 0.00 | 16,800.00 | 16,800.00 | 0.00 | 0.00 |
| TRASH | 6795-0000 | 1,340.90 | 1,593.85 | 853.95 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 12,828.70 | 12,000.00 | -828.70 | -6.91 |
| TOTAL MULTI-FAMILY UTILITIES | 6799-9999 | 26,326.39 | 21,596.31 | 12,624.05 | 17,500.00 | 18,300.00 | 20,500.00 | 20,500.00 | 23,500.00 | 19,500.00 | 19,500.00 | 17,500.00 | 17,500.00 | 234,846.75 | 226,800.00 | -8,046.75 | -3.55 |
| MULTI-FAMILY TAXES AND INSURANCE | 6800-0000 | | | | | | | | | | | | | | | | |
| REAL ESTATE TAXES | 6810-0000 | 37,500.00 | 39,493.96 | 37,500.00 | 37,500.00 | 37,500.00 | 37,500.00 | 37,500.00 | 37,500.00 | 37,500.00 | 37,500.00 | 37,500.00 | 37,500.00 | 451,995.96 | 450,000.00 | -1,995.96 | -0.44 |
| INSURANCE - PROPERTY | 6820-0000 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 57,600.00 | 57,600.00 | 0.00 | 0.00 |
| TOTAL MULTI-FAMILY TAXES AND INSURANCE | 6825-9999 | 42,300.00 | 44,293.96 | 42,300.00 | 42,300.00 | 42,300.00 | 42,300.00 | 42,300.00 | 42,300.00 | 42,300.00 | 42,300.00 | 42,300.00 | 42,300.00 | 509,595.96 | 507,600.00 | -1,995.96 | -0.39 |
| TOTAL MULTI-FAMILY OPERATING EXPENSES | 6998-9999 | 138,723.80 | 138,037.32 | 101,916.79 | 121,422.67 | 122,422.67 | 124,622.67 | 124,622.67 | 128,622.67 | 123,622.67 | 123,122.67 | 123,872.67 | 120,072.67 | 118,932.63 | 1,476,581.90 | 1,478,422.00 | -1,138.90 | -0.08 |
| NON-OPERATING EXPENSES | 7000-0000 | | | | | | | | | | | | | | | | |
| INTEREST EXPENSE | 7039-0000 | | | | | | | | | | | | | | | | |
| INTEREST EXPENSE-MTG PAYABLE | 7040-0000 | 117,200.00 | 117,200.00 | 117,200.00 | 116,666.67 | 116,666.67 | 116,666.67 | 116,666.67 | 116,666.67 | 116,666.67 | 116,666.67 | 116,666.67 | 116,666.63 | 1,401,599.99 | 1,400,000.00 | -1,599.99 | -0.11 |
| INTEREST EXPENSE MEZZANINE | 7042-0000 | 33,400.00 | 33,400.00 | 33,400.00 | 33,400.00 | 33,400.00 | 33,400.00 | 33,400.00 | 33,400.00 | 33,400.00 | 33,400.00 | 33,400.00 | 33,400.00 | 400,800.00 | 400,800.00 | 0.00 | 0.00 |
| TOTAL INTEREST EXPENSE | 7050-9999 | 150,600.00 | 150,600.00 | 150,600.00 | 150,066.67 | 150,066.67 | 150,066.67 | 150,066.67 | 150,066.67 | 150,066.67 | 150,066.67 | 150,066.67 | 150,066.63 | 1,802,399.99 | 1,800,800.00 | -1,599.99 | -0.09 |
| PROFESSIONAL FEES | 7059-0000 | | | | | | | | | | | | | | | | |
| PROFESSIONAL FEES-LEGAL | 7060-0000 | 608.00 | 0.00 | 286.50 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 9,894.50 | 12,000.00 | 2,105.50 | 17.55 |
| PROFESSIONAL FEES-AUDIT | 7080-0000 | 0.00 | 0.00 | 0.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 9,000.00 | 10,000.00 | 1,000.00 | 10.00 |
| PROFESSIONAL FEES-TAX PREP | 7090-0000 | 0.00 | 0.00 | 0.00 | 150.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 350.00 | 250.00 | 250.00 | 2,250.00 | 3,000.00 | 750.00 | 25.00 |

EXHIBIT B

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PROFESSIONAL FEES-APPRAISAL | 7100-0000 | 0.00 | 0.00 | 0.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 900.00 | 1,200.00 | 300.00 | 75.00 |
| TOTAL PROFESSIONAL FEES | 7130-0000 | 800.00 | 0.00 | 298.50 | 2,350.00 | 2,350.00 | 2,350.00 | 2,350.00 | 2,350.00 | 2,350.00 | 2,350.00 | 2,350.00 | 2,350.00 | 22,044.50 | 26,200.00 | 4,155.50 | 15.85 |
| TOTAL NON-OPERATING EXPENSES | 7197-9999 | 151,708.00 | 150,600.00 | 150,688.50 | 152,418.67 | 152,418.67 | 152,418.67 | 152,418.67 | 152,418.67 | 152,418.67 | 152,418.67 | 152,418.67 | 152,418.67 | 1,824,444.49 | 1,827,000.00 | 2,555.51 | 0.14 |
| TOTAL EXPENSES | 7198-9999 | 289,951.80 | 176,637.51 | 152,803.29 | 274,039.34 | 274,839.34 | 277,039.34 | 281,039.34 | 278,039.34 | 275,539.34 | 276,289.34 | 772,489.34 | 772,339.26 | 3,301,026.39 | 3,302,422.00 | 1,395.61 | 0.04 |
| NET INCOME BEFORE DEPRECIATION | 7199-9999 | -1,761.19 | 141,849.44 | 27,430.38 | -22,138.01 | -20,879.01 | -22,138.01 | -29,138.01 | -33,138.01 | 21,113.99 | -24,386.01 | -22,584.01 | -22,439.89 | -8,155.34 | -75,082.00 | 66,926.66 | -89.14 |
| TOTAL NET INCOME AFTER DEPRECIATION | 7999-9999 | -1,761.19 | 141,849.44 | 27,430.38 | -22,138.01 | -20,838.01 | -22,138.01 | -29,138.01 | -33,138.01 | 21,113.99 | -24,386.01 | -22,584.01 | -22,435.89 | -8,155.34 | -75,082.00 | 66,926.66 | -89.14 |

EXHIBIT B

EXHIBIT C

LETTER TO DTBRA

May ___, 2008

Delhi Township Brownfield
    Redevelopment Authority

_____
_____

Attn: _____

> **Re:** Brownfield Reimbursement Agreement dated March 26, 2002 by and between Delhi Township Brownfield Redevelopment Authority ("**DTBRA**") and Woodland Lakes Investment Group, L.L.C. ("**Borrower**") ("**Initial Reimbursement Agreement**"), amended by that certain First Amendment to Brownfield Reimbursement Agreement, ("**First Amendment**") that certain Second Amendment to Brownfield Reimbursement Agreement dated August 1, 2005 ("**Second Amendment**") and further amended by the Third Amendment to Brownfield Reimbursement Agreement dated January 24, 2006 ("**Third Amendment**") (the Initial Reimbursement Agreement, together with the First Amendment, the Second Amendment, the Third Amendment and any further amendments or modifications thereto, the "**Reimbursement Agreement**")

Ladies and Gentlemen:

Borrower, the owner of that certain property located at 4200 Dell Road in the Township of Delhi, County of Ingham, State of Michigan and commonly known as the Woodland Lakes Apartments (the "Property"), has pledged and granted a security interest to HARTFORD MEZZANINE INVESTORS I, LLC, a Delaware limited liability company ("Lender") (together with its successors and assigns, the "Lender") and has collaterally assigned to Lender all of its right, title and interest in and to the Reimbursement Agreement, which includes the right to receive all payments thereunder (which will be paid by the DTBRA when it receives the funds necessary to make such payments). In connection therewith, notwithstanding anything to the contrary in the Reimbursement Agreement, Borrower has agreed that (i) all reimbursement payments due to Borrower from DTBRA under the Reimbursement Agreement shall be deposited directly with Lender (rather than Borrower), and (ii) Lender has the right to request all such reimbursement payments and deliver all documentation to DTBRA necessary to receive such reimbursement payments. Accordingly, from and after the date of this letter, Borrower irrevocably requests and directs that DTBRA deliver directly to Lender at the following address each reimbursement payment that becomes payable to Borrower under the Reimbursement Agreement:

EXHIBIT C

HARTFORD MEZZANINE INVESTORS I, LLC
c/o Key Real Estate Equity Capital, Inc.
127 Public Square, 7th Floor
Cleveland, Ohio 44114
Attention: Director of Asset Management
– James MacQueen
Telecopy: (216) 689-4700

These payment instructions cannot be withdrawn or modified without prior written consent of the Lender or its agent or pursuant to a joint written instruction from Borrower and Lender or its agent.

Please contact me if you have any questions.

Thank you.

WOODLAND LAKES INVESTMENT GROUP, L.L.C.

By: _____
Name: _____
Title: _____

The undersigned acknowledges receipt of this letter and agrees to comply with the provisions hereof.

DELHI TOWNSHIP BROWNFIELD
REDEVELOPMENT AUTHORITY

By:_____
Name:_____
Title:_____

EXHIBIT C

# EXHIBIT D
## SCHEDULE OF REIMBURSEMENTS

04/24/2008 7:02:05 PM  Page 1

Woodland Lakes Brownfield Interest Rate Calculation

Compound Period ......... :  Annual

Nominal Annual Rate .... :  8.782 %

AMORTIZATION SCHEDULE - Normal Amortization

| | Date | Loan | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|---|
| 11 | 02/15/2008 | | 142,139.38 | 22,780.25 | 119,359.13 | 663,813.00 |
| 12 | 09/30/2008 | | 46,000.00 | 28,040.27 | 17,959.73 | 645,853.27 |
| 2008 Totals | | 0.00 | 188,139.38 | 50,820.52 | 137,318.86 | |
| 13 | 02/15/2009 | | 150,000.00 | 16,512.56 | 133,487.44 | 512,365.83 |
| 14 | 09/30/2009 | | 46,000.00 | 21,548.03 | 24,451.97 | 487,913.86 |
| 2009 Totals | | 0.00 | 196,000.00 | 38,060.59 | 157,939.41 | |
| 15 | 02/15/2010 | | 150,000.00 | 12,474.52 | 137,525.48 | 350,388.38 |
| 16 | 09/30/2010 | | 46,000.00 | 14,735.92 | 31,264.08 | 319,124.30 |
| 2010 Totals | | 0.00 | 196,000.00 | 27,210.44 | 188,789.56 | |
| 17 | 02/15/2011 | | 155,000.00 | 8,159.07 | 146,840.93 | 172,283.37 |
| 18 | 09/30/2011 | | 48,000.00 | 7,245.54 | 40,754.46 | 131,528.91 |
| 2011 Totals | | 0.00 | 203,000.00 | 15,404.61 | 187,595.39 | |
| 19 | 02/15/2012 | | 134,891.70 | 3,362.79 | 131,528.91 | 0.00 |
| 2012 Totals | | 0.00 | 134,891.70 | 3,362.79 | 131,528.91 | |
| Grand Totals | | 0.00 | 918,031.08 | 134,858.95 | 783,172.13 | |

EXHIBIT D

EXHIBIT E
ORGANIZATIONAL CHART

[contained on next page]

EXHIBIT E

**WOODLAND LAKES INVESTMENT GROUP, L.L.C.**
Federal ID # 38-3616784

Member Analysis and Ownership Percentages

WLA Management, Inc.
Fed Id # 2G-0112252
Membership - 1%

Covenant Investment
Group, Inc.
Fed. ID # 38-3041834
Membership - 19.1726%

Harrison Investment
Group, L.L.C.
Fed ID #38-3533807
Membership - 19.1256%

KTM Development
Corporation
Fed ID # 38-3332359
Membership - 19.1256%

TMC Investment Group,
L.L.C.
Fed ID #38-552300
Membership - 6.0000%

Individual Members
Charles Crouch
Mbrshp - 11.7696%
Frank Vargas
Mbrshp - 1.9616%
Brent Chappelle
Mbrshp - 1.9616%
Shawn O'Brien
Mbrshp - 7.3560%

Alliance Investment
Group, L.L.C.
Fed ID #27-0016614
Membership - 10.7696%

Terra Management
Company
Fed ID# 38-3382533
Membership - 1.3160%

SLHA Investment
Group, L.L.C.
Fed ID #38-3552295
Mbrshp - 0.1504%

Petoskey Investment Group,
L.L.C.
Fed ID #38-3533804
Membership 0.0558%

Score Properties, Inc.
Fed ID #38-3238632
Membership - 0.0564%

Evergreen Investment
Group, L.L.C.
Fed ID #38-3424377
Membership 0.0376%

Chesco Investment
Properties, L.L.C.
Fed ID #38-3408639
Membership - 0.0376%

Grand Ledge Investment
Group, L.L.C.
Fed ID #38-3533806
Membership - 0.0376%

Abbott Road Commons
L.L.C.
Fed ID #38-3284115
Membership - 0.0564%

EXHIBIT E

I certify that the foregoing organizational chart is true and correct as of 4/23/08.

Scott A. Chappelle, President, WLA Management, Inc.,
Manager

# EXHIBIT G

## GUARANTY

THIS GUARANTY ("**Guaranty**") is made as of June 3, 2008 by SCOTT A. CHAPPELLE, LAURA A. CHAPPELLE, EVERT KRAMER, JR., AND ROSALIND KRAMER (together with their successors, assigns, heirs, and personal representatives, individually, collectively, jointly and severally, the "**Guarantor**"), to and for the benefit of HARTFORD MEZZANINE INVESTORS I, LLC, a Delaware limited liability company (together with its successors and assigns, the "**Lender**").

### RECITALS

A.     WOODLAND LAKES INVESTMENT GROUP, L.L.C., a Michigan limited liability company ("**Borrower**") and Lender are entering into a certain Forbearance and Modification Agreement of even date herewith ("**Forbearance Agreement**") in connection with that certain loan ("**Loan**") made to Borrower in the maximum principal amount of $3,340,000.00. The Loan is evidenced by Borrower's promissory note to Lender dated January 4, 2006 ("**Note**") and that certain Loan Agreement dated January 4, 2006 ("**Loan Agreement**"), and is secured by, among other things, a Pledge Agreement dated January 4, 2006 ("**Pledge Agreement**"). Scott A. Chappelle, Laura A. Chappelle, Kevin T. McGraw, Sharon D. McGraw, Evert Kramer, Jr., and Rosalind Kramer (collectively, "**Limited Guarantors**") executed that certain Guaranty dated January 4, 2006 ("**Limited Guaranty**"). The Note, the Loan Agreement, the Pledge Agreement, the Guaranty, this Guaranty, and all other existing or future documents evidencing, securing or executed in connection with the Loan, and all documents that hereafter modify, amend, extend, restate, replace, or otherwise affect the Loan or any of the foregoing documents are referred to collectively herein as the "**Loan Documents**."

B.     Guarantor may derive material benefits from the Forbearance Agreement. Guarantor acknowledges that Lender would not enter into the Forbearance Agreement if Guarantor did not deliver this Guaranty to Lender.

C.     Lender has relied on the statements and agreements contained herein in agreeing to enter into the Forbearance Agreement. The execution and delivery of this Guaranty by Guarantor is a condition precedent to the execution of the Forbearance Agreement by Lender. Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Loan Agreement and Forbearance Agreement.

### AGREEMENTS

NOW, THEREFORE, intending to be legally bound, Guarantor, in consideration of the matters described in the foregoing Recitals, which Recitals are incorporated herein and made a part hereof, and for other good and valuable consideration the receipt and sufficiency of which are acknowledged, hereby covenants and agrees for the benefit of Lender and its successors, endorsees, transferees, participants and assigns as follows:

2.1    Guaranty.

Each Guarantor, jointly and severally, absolutely, irrevocably and unconditionally guarantees the punctual and complete payment and performance when due of (i) all payments of Base Interest at the stated interest rate in the Loan Agreement (which shall not include default interest, late fees, or any other cost or charges due to Lender in accordance with the Loan Agreement) ("**Base Interest Payments**") for a period ("**Obligation Period**") commencing on the date hereof and continuing through and including the payment due on December 1, 2009, and (ii) payments to all suppliers of goods or services (other than the claims of the Senior Lender and Mezzanine Lender) having claims against the Borrower, which shall be limited in an amount not to exceed amounts contemplated in the approved Budget arising during the Obligation Period ("**Borrower Liabilities**") (the Base Interest Payments and Borrower Liabilities are hereinafter collectively referred to as the "**Guaranteed Obligations**").

Notwithstanding the foregoing,

(i)    with respect to the Borrower Liabilities, if there is a conveyance of membership interests in the Borrower that is approved by Lender and Senior Lender by which the Guarantors no longer directly or indirectly control the operations of the Borrower and the Project, the amount of the Borrower Liabilities shall be limited to only those Borrower Liabilities that have been incurred prior to such conveyance and are contemplated under the approved Budget that is in place as of the date of such conveyance, and

(ii)    the Guaranteed Obligations shall not be due and payable from Guarantors if either (A) or (B) below is satisfied:

(A) an Event of Default occurs due to a breach by a Pledgor ("**Debtor Pledgor**") under Section 9.1(i) of the Loan Agreement, and each of the following is satisfied: (1) no other Event of Default shall have then occurred and be continuing; (2) within 180 days of the occurrence of such event, any other Pledgor or Guarantor acquires the Pledged Collateral of the Debtor Pledgor; (3) the Debtor Pledgor is no longer a member of Borrower; and (4) by virtue of such acquisition, the Pledged Collateral does not become property of any bankruptcy estate and does not become subject to any lien, pledge or encumbrance other than the pledge to Lender; or

(B) a Pledgor violates a provision of the Loan Documents (other than 9.1(i) of the Loan Agreement), and each of the following is satisfied: (1) no other Event of Default shall have occurred and be continuing; (2) the action that caused the Event of Default is caused directly or indirectly by a Pledgor that is not controlled directly or indirectly by any Guarantor; (3) no other Event of Default shall have occurred and be continuing; (4) neither Borrower nor any Guarantor, nor any person directly or indirectly owned or controlled by Borrower or any Guarantor directly or indirectly participated, colluded, assisted, or acted in concert with Pledgor to cause the action creating the Event of Default; and (5) the action of such Pledgor does not affect the Pledged

Collateral or impede, alter or interfere with Lender's ability to exercise its rights to foreclose upon all of its Pledged Collateral.

2.2    Continuing Obligation.

This Guaranty is a continuing guaranty and in full force and effect and will be discharged upon the first to occur of (i) December 31, 2009, if Lender has been paid all Base Interest Payments under the Loan Agreement, or (ii) if and when the Loan has been paid in full (unless discharged in accordance with Section 2.1 above), and all obligations under the Loan Agreement, Forbearance Agreement and other Loan Documents have been fully performed; provided, however, that notwithstanding any of the foregoing to the contrary, this Guaranty shall remain in full force and effect for so long as any payment hereunder (or under the Loan Agreement) may be voided in bankruptcy proceedings as a preference or for any other reason.

2.3    Direct Action Against Guarantor.

This Guaranty is a guaranty of payment and performance and not of collection. Lender has the right to require each Guarantor to pay, comply with and satisfy its obligations and liabilities under this Guaranty, and shall have the right to proceed immediately against each Guarantor with respect thereto, without being required to attempt recovery first from Borrower or any other party, without first suing on the Note or any other Loan Document and without demonstrating that the collateral for the Loan is inadequate security or that Lender has exercised (to any degree) or exhausted any of Lender's other rights and remedies with respect to Borrower or any collateral for the Loan.

ARTICLE 3
GENERAL TERMS AND CONDITIONS

3.1    Payments.

Amounts payable to Lender under this Guaranty shall be immediately due and payable on Lender's written demand and shall be paid without reduction by set-off, defense, counterclaim or cross-claim. Lender may apply all money received by Lender to payment or reduction of the Loan or reimbursement of Lender's expenses, in such priority and proportions, and at such time or times as Lender may elect.

3.2    Cumulative Remedies.

Guarantors acknowledge that whenever an uncured Event of Default exists and remains uncured following five days notice thereof to Borrower, Lender shall be entitled to accelerate the Loan and exercise all other rights and remedies as have been provided to Lender hereunder, under the other Loan Documents, by law or in equity including enforcement of this Guaranty. All rights and remedies are cumulative and may be exercised independently, concurrently or successively in such order and manner as Lender may elect from time to time and as often as occasion therefor shall arise. Lender's delay or failure to accelerate the Loan or exercise any other remedy upon the occurrence of an Event of Default with respect to the Loan shall not be deemed a waiver of such right as remedy. No partial exercise by Lender of any right or remedy will preclude further exercise thereof. Notice or demand given to Borrower in any instance will

not entitle Borrower to notice or demand in similar or other circumstances nor constitute Lender's waiver of its right to take any future action in any circumstance without notice or demand (except where expressly required by this Guaranty to be given). Lender may release other security for the Loan, may release any party liable for the Loan, may grant extensions, renewals or forbearances with respect thereto, may accept a partial or past due payment or grant other indulgences, or may apply any other security held by it to payment of the Loan, in each case without prejudice to its rights under this Guaranty and without such action being deemed an accord and satisfaction or a reinstatement of the Loan. Lender will not be deemed as a consequence of its delay or failure to act, or any forbearance granted, to have waived or be estopped from exercising any of its rights or remedies.

3.3    Enforcement Costs.

Guarantors hereby agree to pay, on written demand by Lender, all reasonable legal expenses and other reasonable Loan related expenses necessarily incurred by Lender in collecting any amount payable under this Guaranty or enforcing or protecting its rights under this Guaranty in each case whether or not legal proceedings are commenced, which fees and costs shall not exceed the amount of $50,000. Amounts incurred by Lender (up to the amount of $50,000) shall be due and payable on demand.

3.4    Unimpaired Liability.

Each Guarantor acknowledges and agrees that all obligations hereunder are and shall be absolute and unconditional under any and all circumstances without regard to the validity, regularity or enforceability of any or all of the Loan Documents or the existence of any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor or surety. Without limiting the foregoing, each Guarantor acknowledges and agrees that its respective liability hereunder shall in no way be released, terminated, discharged, limited or impaired by reason of any of the following (whether or not Guarantor has any knowledge or notice thereof): (a) Borrower's lack of authority or lawful right to enter into any of the Loan Documents; (b) any modification, supplement, extension, consolidation, restatement, waiver or consent provided by Lender with respect to any of the Loan Documents including approval of a Transfer or the grant of extensions of time for payment or performance; (c) failure to record any Loan Document or to perfect any security interest intended to be provided thereby or otherwise to protect, secure or insure any collateral for the Loan; (d) Lender's failure to exercise, or delay in exercising, any rights or remedies Lender may have under the Loan Documents or under this Guaranty; (e) the release or substitution, in whole or in part, of any collateral for the Loan or acceptance of additional collateral for the Loan; (f) the release of any Guarantor from performance, in whole or in part, under this Guaranty or the release of Borrower from performance, in whole or in part, under any of the Loan Documents, in each case whether by operation of law, Lender's voluntary act, or otherwise; (g) any bankruptcy, insolvency, reorganization, adjustment, dissolution, liquidation or other like proceeding involving or affecting Borrower, any other Guarantor or Lender; (h) the termination or discharge of the Security Instrument or the exercise of any power of sale or any foreclosure (judicial or otherwise) or delivery or acceptance of a deed-in-lieu of foreclosure; (i) the existence of any claim, setoff, counterclaim, defense or other rights which Guarantor may have against Borrower, any other Guarantor or Lender, whether in connection with the Loan or any other transaction; or

1651809.8                                      4

(j) the accuracy or inaccuracy of the representations and warranties made by Borrower in any of the Loan Documents.

3.5    Waivers.

        Each Guarantor hereby waives and relinquishes, to the fullest extent permitted by law: (a) all rights or claims of right to cause a marshalling of assets or to cause Lender to proceed against any of the collateral for the Loan before proceeding under this Guaranty against it or any other Guarantor; (b) all rights and remedies accorded by applicable law to sureties or guarantors, except any rights of subrogation and contribution (the exercise of which are subject to the terms of this Guaranty); (c) the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought by or against it; (d) notice of acceptance of this Guaranty and of any action taken or omitted in reliance hereon; (e) presentment for payment, demand, protest, notice of nonpayment or failure to perform or observe, or any other proof, notice or demand to which it might otherwise be entitled with respect to its obligations hereunder; and (f) all homestead or exemption rights against the obligations hereunder and the benefits of any statutes of limitation or repose.

3.6    Certain Consequences of Borrower's Bankruptcy.

        (a)    If Borrower shall be subject to the protection of the Bankruptcy Code or any other insolvency law the effect of which is to prevent or delay Lender from taking any remedial action against Borrower, including the exercise of any option Lender has to accelerate and declare the Loan immediately due and payable, Lender may, as against each Guarantor, nevertheless declare the Loan due and payable and enforce any or all of its rights and remedies against any Guarantor as provided herein.

        (b)    If Lender is required to refund or return any payment or amount (a "Avoided Payment") received by Lender in payment of any of the Guaranteed Obligations or any obligation owed under the Note or any other Loan Document because Lender's receipt of the Avoided Payment is held by a court of competent jurisdiction to be a voidable preference, a fraudulent transfer or conveyance, or otherwise invalid under the Bankruptcy Code or any other insolvency law, or for any other reason, the Avoided Payment shall be treated for all purposes as if it had never been received by Lender. Each Guarantor's liability under this Guaranty shall continue or be automatically reinstated with respect to any Avoided Payment, notwithstanding any notice of revocation of this Guaranty or any recovery or payment in full of the Loan, until such time as all periods have expired within which Lender could be required to return any amount paid at any time on account of the Guaranteed Obligations.

        (c)    Until payment in full of the Loan (including interest accruing on the Note after the commencement of a proceeding by or against Borrower under the Bankruptcy Code, which interest the parties agree remains a claim that is prior and superior to any claim of Guarantor notwithstanding any contrary practice, custom or ruling in cases under the Bankruptcy Code generally), Guarantors agree not to accept any payment or satisfaction of any kind of indebtedness of Borrower to Guarantors and hereby assign such indebtedness to Lender, including the right (but not the obligation) to file proof of claim and to vote in any other

bankruptcy or insolvency action, including the right to vote on any plan of reorganization, liquidation or other proposal for debt adjustment under Federal or state law.

3.7     Subrogation and Contribution.

Each Guarantor agrees that no payment by it under this Guaranty shall give rise to (a) any rights of subrogation against Borrower or the collateral for the Loan, or (b) any rights of contribution against any other Guarantor, in each case unless and until Lender has received full and indefeasible payment of the Loan. If the deferral of such rights shall be unenforceable for any reason, each Guarantor agrees that (a) its rights of subrogation shall be junior and subordinate to Lender's rights against Borrower and the collateral for the Loan, and (b) its rights of contribution against any other Guarantor shall be junior and subordinate to Lender's rights against each other Guarantor.

3.8     Subordination of Borrower's Obligations to Guarantor.

Any indebtedness of Borrower to any Guarantor, now or hereafter existing, together with any interest thereon, shall be and hereby is deferred, postponed and subordinated to the prior payment in full of the Loan. Further, each Guarantor agrees that should such Guarantor receive any payment, satisfaction or security for any indebtedness owed by Borrower to it, the same shall be delivered to Lender in the form received (endorsed or assigned as may be appropriate) for application on account of, or as security for, the Loan and until so delivered to Lender, shall be held in trust for Lender as security for the Loan.

3.9     Financial Reports; Inspection of Records.

Each Guarantor agrees to furnish to Lender from time to time, by such dates as Lender may require (but no more frequently than annually unless a failure to cure an Event of Default under the Loan Agreement or any other Loan Document exists, in which event Lender may require same from time to time), Guarantor's Federal and State income tax returns, a personal financial statement if Guarantor is an individual and a balance sheet and statement of changes in Guarantor's financial position if Guarantor is not an individual, in each case certified by such Guarantor as complete and accurate in all material respects. Such financial statements shall be in reasonable detail and prepared in accordance with consistently applied accounting methods reasonably acceptable to Lender.

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES

4.1     Guarantor Due Diligence and Benefit.

Each Guarantor represents and warrants to Lender that (a) the Loan and this Guaranty are for commercial purposes, (b) it has had adequate opportunity to review this Guaranty and all Loan Documents, (c) it is fully aware of obligations of Borrower thereunder and of the financial condition, assets and prospects of Borrower, and (d) it is executing and delivering this Guaranty based solely upon Guarantor's own independent investigation of the matters contemplated by clauses (a)-(c) and in no part upon any representation, warranty or statement of Lender with respect thereto.

1651809.B

6

4.2     General.

Each Guarantor individually, as to such Guarantor, represents and warrants that:

(a)     Authority.  Guarantor has the full power and authority to execute and deliver this Guaranty and to perform its obligations hereunder.  If Guarantor is not an individual: (i) Guarantor is duly organized, validly existing and in good standing under the laws of the state of its formation, and (ii) the execution, delivery and performance of this Guaranty by Guarantor has been duly and validly authorized and the person(s) signing this Guaranty on Guarantor's behalf has been validly authorized and directed to sign this Guaranty.

(b)     Valid and Binding Obligation.  This Guaranty constitutes Guarantor's legal, valid and binding obligation, enforceable against it in accordance with its terms, except to the extent enforceability may be limited under applicable bankruptcy and insolvency laws and similar laws affecting creditors' rights generally and to general principles of equity.

(c)     No Conflict with Other Agreement.  Guarantor's execution, delivery and performance of this Guaranty will not (i) violate Guarantor's organizational documents if Guarantor is not an individual, (ii) result in the breach of, or conflict with, or result in the acceleration of, any obligation under any guaranty, indenture, credit facility or other instrument to which Guarantor or any of its assets may be subject, or (iii) violate any order, judgment or decree to which Guarantor or any of its assets is subject.

(d)     No Pending Litigation.  No action, suit, proceeding or investigation currently is pending or, to the best of Guarantor's knowledge, threatened against Guarantor which, either in any one instance or in the aggregate, may have a material, adverse effect on Guarantor's ability to perform its obligations under this Guaranty.

(e)     Consideration.  Guarantor owns a direct or indirect interest in Borrower and will derive substantial benefit from the Forbearance Agreement.

<div align="center">

ARTICLE 5
INTENTIONALLY DELETED

ARTICLE 6
MISCELLANEOUS

</div>

6.1     Notices.

All notices and other communications under this Guaranty are to be in writing and addressed in the case of Lender to the address as set forth below and in the case of each Guarantor, as set forth below such Guarantor's signature hereto.  Default or demand notices shall be deemed to have been duly given upon the earlier of:  (a) actual receipt; (b) one (1) business day after having been timely deposited for overnight delivery, fee prepaid, with a reputable overnight courier service, having a reliable tracking system; (c) one (1) business day after having been sent by telecopier (with answer back acknowledged) provided an additional notice is given pursuant to (b); or (d) three (3) business days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by certified mail,

postage prepaid, return receipt requested, and in the case of clause (b) and (d) irrespective of whether delivery is accepted. A new address for notice may be established by written notice to the other parties; provided, however, that no change of address will be effective until written notice thereof actually is received by the party to whom such address change is sent. Notice to outside counsel or parties other than a named Guarantor and Lender, now or hereafter designated by a party as entitled to notice, are for convenience only and are not required for notice to a party to be effective in accordance with this section. Notice addresses are as follows:

Address for Lender:

> 127 Public Square, 7th Floor
> Cleveland, Ohio 44114
> Attention: Director of Asset Management
> — James MacQueen
> Telecopy: (216) 689-4700

With a copy to:

> Daniel J. Flanigan, Esq.
> Polsinelli Shalton Flanigan Suelthaus PC
> 700 W. 47th St., Suite 1000
> Kansas City, Missouri 64112
> Telephone: (816) 753-1000
> Facsimile: (816) 753-1536

Address for Guarantor:

> Scott A. Chappelle and Laura A. Chappelle
> 1427 West Saginaw, Ste. 200
> East Lansing, MI 48823
> Telephone: (517) 336-4400
> Facsimile: (517) 336-4499

> Evert Kramer, Jr. and Rosalind Kramer
> 1427 West Saginaw, Ste. 200
> East Lansing, MI 48823
> Telephone: (517) 336-4400
> Facsimile: (517) 336-4499

6.2     Entire Agreement; Modification.

This Guaranty is the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes and replaces all prior discussions, communications and agreements (oral or written). This Guaranty shall not be modified, supplemented, or terminated, nor any provision hereof waived, except by a written instrument signed by the party against whom enforcement thereof is sought, and then only to the extent expressly set forth in such writing.

6.3     Successors and Assigns Bound; Obligations Not Delegable.

This Guaranty is binding upon and inures to the benefit of the Guarantors, Lender and their respective heirs, executors, legal representatives, successors, and assigns, whether by

voluntary action of the parties or by operation of law. No Guarantor may delegate or transfer its obligations under this Guaranty.

6.4     Offsets, Counterclaims and Defenses.

Any assignee of Lender's interest in and to this Guaranty or the other Loan Documents shall take the same free and clear of all offsets, counterclaims or defenses which are unrelated to the Guaranty, the Loan, or the Loan Documents which any Guarantor may otherwise have against any assignor, and no such unrelated counterclaim or defense shall be interposed or asserted by any Guarantor in any action or proceeding brought by any such assignee upon, this Guaranty or the other Loan Documents and any such right to interpose or assert any such unrelated offset, counterclaim or defense in any such action or proceeding is hereby expressly waived by each Guarantor.

6.5     Joint and Several Obligations.

If more than one Guarantor signs this Guaranty, each Guarantor shall be jointly and severally liable hereunder. Unless the context clearly indicates that a reference is only to a signer of this Guaranty, references to the "Guarantor" or "Guarantors" herein shall also be deemed to include all other Persons who sign separate guaranty agreements in connection with the Loan.

6.6     Time of the Essence.

Each Guarantor agrees that time is of the essence of all of such Guarantor's obligations under this Guaranty.

6.7     Unenforceable Provisions.

Any provision of this Guaranty which is determined by a court of competent jurisdiction or government body to be invalid, unenforceable or illegal shall be ineffective only to the extent of such determination and shall not affect the validity, enforceability or legality of any other provision, nor shall such determination apply in any circumstance or to any party not controlled by such determination.

6.8     Duplicate Originals; Counterparts.

This Guaranty may be executed in any number of duplicate originals, and each duplicate original shall be deemed to be an original. This Guaranty (and each duplicate original) also may be executed in any number of counterparts, each of which shall be deemed an original and all of which together constitute a fully executed Guaranty even though all signatures do not appear on the same document.

6.9     Rules of Construction.

The following rules of construction shall be applicable for all purposes of this Guaranty and all documents or instruments supplemental hereto, unless the context otherwise requires:

(a)     The terms "include," "including," and similar terms shall be construed as if followed by the phrase "without being limited to."

(b)     No inference in favor of or against any party shall be drawn from the fact that such party has drafted any portion hereof or any other Loan Document.

(c)     The cover page (if any) of, all recitals set forth in, and all Exhibits to, this Guaranty are hereby incorporated herein.

(d)     Wherever Lender's judgment, consent, or approval is required under this Guaranty or any other Loan Document for any matter or thing, or Lender shall have an option, election, or right of determination thereunder including any right to determine that something is satisfactory or not ("Decision Power"), such Decision Power shall be exercised in the sole and absolute discretion of Lender unless otherwise expressly stated to be reasonably exercised. Such Decision Power and each other power granted to Lender upon this Guaranty or any other Loan Document may be exercised by Lender or by any authorized agent of Lender (including any servicer or attorney-in-fact), and Borrower hereby expressly agrees to recognize the exercise of such Decision Power by such authorized agent.

(e)     Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine, or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

(f)     The term "or" has the inclusive meaning represented by the phrase "and/or," except where otherwise stated.

(g)     Article and section headings are for convenience only and shall not be used in interpretation of this Guaranty.

(h)     The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Guaranty as a whole and not to any particular section, paragraph or other subdivision; and the word "section" refers to the entire section and not to any particular subsection, paragraph of other subdivision; and "Guaranty" and each of the Loan Documents referred to herein mean the agreement as originally executed and as hereafter modified, supplemented, extended, consolidated, or restated from time to time.

6.10    Governing Law.

This Guaranty shall be interpreted and enforced according to the laws of Ohio (without giving effect to its rules governing conflict of laws).

6.11    Consent to Jurisdiction.

Each Guarantor irrevocably consents and submits to the exclusive jurisdiction and venue of any state or federal court sitting in the county and State of Ohio with respect to any legal action arising with respect to this Guaranty and waives all objections that it may have to such jurisdiction and venue.

6.12    Waiver of Counterclaim.

EACH GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND
INTENTIONALLY WAIVES THE RIGHT TO ASSERT ANY COUNTERCLAIM,
OTHER THAN A COMPULSORY OR MANDATORY COUNTERCLAIM, IN ANY
ACTION OR PROCEEDING BROUGHT AGAINST SUCH GUARANTOR BY LENDER
OR ITS AGENTS.

6.13    Waiver of Trial by Jury.

EACH GUARANTOR AND LENDER HEREBY KNOWINGLY, VOLUNTARILY
AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY
JURY IN RESPECT OF ANY LITIGATION BASED ON THE LOAN OR ARISING OUT
OF, UNDER, OR IN CONNECTION WITH THE LOAN, THIS GUARANTY, THE
NOTE, THE LOAN AGREEMENT OR ANY OTHER LOAN DOCUMENT, OR ANY
COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER
VERBAL OR WRITTEN), OR ACTION OF GUARANTOR OR LENDER. THIS
PROVISION IS A MATERIAL INDUCEMENT FOR LENDER'S ACCEPTANCE OF
THIS GUARANTY AND LENDER'S MAKING OF THE LOAN.

*[Remainder of page is blank; signature page follows.]*

1651809.8                                    11

IN WITNESS WHEREOF, Guarantor has executed and delivered this Guaranty as of the date first written above.

"GUARANTOR":

Scott A. Chappelle

Linda A. Chappelle

Evert Kramer, Jr.

Rosalind Kramer

STATE OF MICHIGAN )
                   )
COUNTY OF INGHAM )

On this 6th day of June , 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared **SCOTT A. CHAPPELLE**, to me personally known, who being by me duly sworn, acknowledged to me that he executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in Ingham County, State of Michigan, the day and year last above written.

                                     Notary Public

My commission expires:

4/15/2011

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
In the County of Ingham

STATE OF MICHIGAN )
                   )
COUNTY OF INGHAM )

On this 6th day of June , 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared **LAURA A. CHAPPELLE**, to me personally known, who being by me duly sworn, acknowledged to me that she executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in Ingham County, State of MICHIGAN the day and year last above written.

                                     Notary Public

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of Ingham

My commission expires:

4/15/2011

STATE OF _MICHIGAN_ )
                     )
COUNTY OF _INGHAM_ )

On this _6th_ day of _June_____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared **EVERT KRAMER, JR.** to me personally known, who being by me duly sworn, acknowledged to me that he executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_____ County, State of _MICHIGAN_, the day and year last above written.

_____
Notary Public

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of _Ingham_

My commission expires:

_4/15/2011_____

STATE OF _MICHIGAN_ )
                     )
COUNTY OF _INGHAM_ )

On this _6th_ day of _June_____, 2008, before me, the undersigned, a notary public within and for said County and State, personally appeared **ROSALIND KRAMER**, to me personally known, who being by me duly sworn, acknowledged to me that she executed the same for the purposes therein stated.

In witness whereof, I have set my hand and affixed my official seal at my office in _Ingham_____ County, State of _MICHIGAN_, the day and year last above written.

_____
Notary Public

JULIA L. SKINNER
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires April 15, 2011
Acting in the County of _Ingham_

My commission expires:

_4/15/2011_____





# Polsinelli

### Shalton | Flanigan | Suelthaus

700 West 47th Street, Suite 1000 | Kansas City, MO 64112-1802
(816) 753-1000 | Facsimile: (816) 753-1536 | www.polsinelli.com

Brett D. Anders
(816) 360-4267
banders@polsinelli.com

October 14, 2008

**BY FEDERAL EXPRESS**

Scott A. Chappelle
1427 West Saginaw, Ste. 200
East Lansing, MI 48823

Laura A. Chappelle
1427 West Saginaw, Ste. 200
East Lansing, MI 48823

Evert Kramer, Jr.
1427 West Saginaw, Ste. 200
East Lansing, MI 48823

Rosalind Kramer
1427 West Saginaw, Ste. 200
East Lansing, MI 48823

Kevin T. McGraw
1427 West Saginaw, Ste. 200
East Lansing, MI 48823

Sharon D. McGraw
1427 West Saginaw, Ste. 200
East Lansing, MI 48823

Re:   **Guarantys Dated January 4, 2006 and June 3, 2008**

Ladies and Gentlemen:

This firm is counsel to Hartford Mezzanine Investors I, LLC, a Delaware limited liability company ("Mezzanine Lender"). Mezzanine Lender is the owner of that certain loan (the "Mezzanine Loan") evidenced in part by that certain Term Note, in the original principal amount of $3,340,000.00 (the "Mezzanine Note"), dated January 4, 2006, executed by Woodland Lakes Investment Group, L.L.C., a Michigan limited liability company ("Borrower"). The Mezzanine Loan was made pursuant to that certain Loan Agreement dated January 4, 2006, executed by Mezzanine Lender and Mezzanine Borrower (the "Mezzanine Loan Agreement"). On or about January 4, 2006, each of you (collectively, the "Guarantors") signed and delivered to Mezzanine Lender that certain Guaranty dated January 4, 2006 (the "January 2006 Guaranty").

On or about June 3, 2008, Scott A. Chappelle, Laura A. Chappelle, Evert Kramer, Jr. and Rosalind Kramer signed and delivered to Mezzanine Lender that certain Guaranty dated June 3, 2008 (the "June 2008 Guaranty") as a condition precedent to Mezzanine Lender's execution of that certain Forbearance and Modification Agreement ("Forbearance Agreement") dated June 3,

Kansas City   Chicago   New York   Washington, D.C.   Wilmington
Overland Park   Topeka   Edwardsville

# Polsinelli

Shalton | Flanigan | Southeastern

Scott A. Chappelle
Laura A. Chappelle
Evert Kramer, Jr.
Rosalind Kramer
Kevin T. McGraw
Sharon D. McGraw
October 14, 2008
Page 2

2008, between Mezzanine Lender, Borrower, Guarantors, and other entities and individuals listed on Exhibit A of the Forbearance Agreement.

Under the January 2006 Guaranty, Guarantors guaranteed specific obligations on a recourse basis as set forth therein. In turn, under Section 2.1 of the June 2008 Guaranty, Guarantors (except for Kevin and Sharon McGraw) guaranteed the punctual and complete payment of base interest on the unpaid principal amount of the Mezzanine Loan at a rate of 12 percent per annum (the "Base Interest Payments") for the period commencing June 3, 2008 through and including December 1, 2009. Additionally, under Section 2.1 of the June 2008 Guaranty, Guarantors guaranteed the punctual and complete payment and performance of all payments to all suppliers of goods or services having claims against the Borrower ("Borrower Liabilities"). The Base Interest Payments and the Borrower Liabilities are collectively referred to in the Second Guaranty and in this letter as the "Guaranteed Obligations."

Please note that, as of September 30, 2008, the amount due and owing under the January 2006 Guaranty is $42,352. This amount is owed by Guarantors to Mezzanine Lender by virtue of Borrower's failure to pay certain vendors for the months of February through July 2008 when there was cash flow generated by the property and brownfield reimbursements sufficient to pay the invoices submitted by such vendors, including: $28,221 in unpaid invoices for the month of February 2008; $910 in unpaid invoices for the month of March 2008; $1707 in unpaid invoices for the month of April 2008; $1436 in unpaid invoices for the month of May 2008; $2306 in unpaid invoices for the month of June 2008; and $7772 in unpaid invoices for the month of July 2008.

Please note further that, as of September 30, 2008, the amount of the Guaranteed Obligations under the June 2008 Guaranty is $180,417.99. This amount consists of $170,339.99 in Base Interest Payments due from June 3, 2008 through October 2008, including: $33,400.00 due for June 2008; $34,513.33 due for July 2008; $34,513.33 due for August 2008; $33,400.00 due for September 2008; and $34,513.33 due for October 2008. This amount further consists of $10,078.00 in Borrower Liabilities due from June 3, 2008 through July 2008, including $2306.00 for the month of June 2008; and $7772.00 for July 2008. Please make payment of the foregoing amounts to Mezzanine Lender on or before Monday, October 20, 2008, together with fees and costs incurred by the Mezzanine Lender, including attorneys fees, in the amount of $9576.00.

The total of the amounts itemized herein is $222,769.99. The amount owed to Lender is subject to increase as obligations continue to accrue under the January 2006 Guaranty and as additional Guaranteed Obligations are either quantified or continue to accrue under the June 2008 Guaranty. For instance, Mezzanine Lender has not yet quantified Borrower Liabilities for the

# Polsinelli

Scott A. Chappelle
Laura A. Chappelle
Evert Kramer, Jr.
Rosalind Kramer
Kevin T. McGraw
Sharon D. McGraw
October 14, 2008
Page 3

months of August and September 2008, and, when those amounts are determined by Mezzanine Lender, they will be the subject of further demand. In addition, Base Interest will continue to accrue, and will be added to the Guaranteed Obligations by Mezzanine Lender on a monthly basis, in the following amounts:

in November 2008 in the amount of $33,400.00;
in December 2008 in the amount of $34,513.33;
in January 2009 in the amount of $34,513.00;
in February 2009 in the amount of $31,173.33;
in March 2009 in the amount of $34,513.33;
in April 2009 in the amount of $33,400.00;
in May 2009 in the amount of $34,513.33;
in June 2009 in the amount of $33,400.00;
in July 2009 in the amount of $34,513.33;
in August 2009 in the amount of $34,513.33;
in September 2009 in the amount of $33,400.00;
in October 2009 in the amount of $34,513.33;
in November 2009 in the amount of $33,400.00; and
in December 2009 in the amount of $34,513.33.

You are hereby further notified that any past or future negotiation between you or your representatives or agents on the one hand and Mezzanine Lender and its representatives or agents on the other do not and shall not constitute a waiver of Mezzanine Lender's right to exercise its rights and remedies at law or in equity. Any alleged waiver of any of Mezzanine Lender's rights shall not be effective unless in writing and duly executed by an authorized representative of Mezzanine Lender. You shall not be entitled to rely upon any oral statements made or purported to be made by or on behalf of Mezzanine Lender or its agents in connection with any alleged agreement by or on behalf of Mezzanine Lender to refrain from exercising any of Mezzanine Lender's rights.

Nothing set forth herein is intended, and shall not be deemed, to modify, limit, release, reduce or waive any of Mezzanine Lender's rights, remedies, and/or privileges, whether at law or in equity, all of which are hereby specifically reserved. Furthermore, the enumeration of any specific default herein is not intended, and shall not be deemed, to waive other defaults that may currently exist under the Mezzanine Loan.

C:\Documents and Settings\dbrog\Local Settings\Temporary Internet Files\OLK45A\PLAZA-#1702507-v7-demand_letter_to_woodland_lakes_guarantors.DOC



**Polsinelli**
Shalton | Flanigan | Suelthaus

Scott A. Chappelle
Laura A. Chappelle
Evert Kramer, Jr.
Rosalind Kramer
Kevin T. McGraw
Sharon D. McGraw
October 14, 2008
Page 4

Your immediate attention to the matters addressed in this letter is appreciated.  Thank you.

Sincerely,

Brett D. Anders  /by Matt Moriarty

Brett D. Anders

BDA:mm

cc:    McGraw & Eckhardt, PC
1427 West Saginaw, Ste. 200
East Lansing, MI 48823
Attn: Thomas R. Eckhardt, Esq.

James MacQueen (via e-mail)
Alyson Cameron (via e-mail)
Kathryn Louttit (via e-mail)
Daniel Flanigan (via e-mail)
Matt Moriarity (via e-mail)
Marla Bell (via e-mail)

C:\Documents and Settings\dkrog\Local Settings\Temporary Internet Files\OLK45A\PLAZA-#1702507-v7-
demand_letter_to_woodland_lakes_guarantors.DOC



**Polsinelli**
Shelton | Flanigan | Suelthaus

Scott A. Chappelle
Laura A. Chappelle
Evert Kramer, Jr.
Rosalind Kramer
Kevin T. McGraw
Sharon D. McGraw
October 14, 2008
Page 5

bcc:    Robert Edwards (via e-mail)

# EXHIBIT
# I

# Polsinelli

### Shalton | Flanigan | Suelthaus

700 West 47th Street, Suite 1000 | Kansas City, MO 64112-1802
(816) 753-1000 | Facsimile: (816) 753-1536 | www.polsinelli.com

Brett D. Anders
(816) 360-4267
banders@polsinelli.com

October 22, 2008

**BY FEDERAL EXPRESS**

Scott A. Chappelle
1427 West Saginaw, Ste. 200
East Lansing, MI 48823

Laura A. Chappelle
1427 West Saginaw, Ste. 200
East Lansing, MI 48823

Evert Kramer, Jr.
1427 West Saginaw, Ste. 200
East Lansing, MI 48823

Rosalind Kramer
1427 West Saginaw, Ste. 200
East Lansing, MI 48823

Kevin T. McGraw
1427 West Saginaw, Ste. 200
East Lansing, MI 48823

Sharon D. McGraw
1427 West Saginaw, Ste. 200
East Lansing, MI 48823

Re: **Guarantys Dated January 4, 2006 and June 3, 2008**

Ladies and Gentlemen:

This firm is counsel to Hartford Mezzanine Investors I, LLC, a Delaware limited liability company ("Mezzanine Lender"). Mezzanine Lender is the owner of that certain loan (the "Mezzanine Loan") evidenced in part by that certain Term Note, in the original principal amount of $3,340,000.00 (the "Mezzanine Note"), dated January 4, 2006, executed by Woodland Lakes Investment Group, L.L.C., a Michigan limited liability company ("Borrower"). The Mezzanine Loan was made pursuant to that certain Loan Agreement dated January 4, 2006, executed by Mezzanine Lender and Mezzanine Borrower (the "Mezzanine Loan Agreement"). On or about January 4, 2006, each of you (collectively, the "Guarantors") signed and delivered to Mezzanine Lender that certain Guaranty dated January 4, 2006 (the "January 2006 Guaranty").

On or about June 3, 2008, Scott A. Chappelle, Laura A. Chappelle, Evert Kramer, Jr. and Rosalind Kramer signed and delivered to Mezzanine Lender that certain Guaranty dated June 3, 2008 (the "June 2008 Guaranty") as a condition precedent to Mezzanine Lender's execution of that certain Forbearance and Modification Agreement ("Forbearance Agreement") dated June 3, 2008, between Mezzanine Lender, Borrower, Guarantors, and other entities and individuals listed on Exhibit A of the Forbearance Agreement.

**Polsinelli**
Shalton | Flanigan | Suelthaus

Scott A. Chappelle
Laura A. Chappelle
Evert Kramer, Jr.
Rosalind Kramer
Kevin T. McGraw
Sharon D. McGraw
October 22, 2008
Page 2

On October 14, 2008, the undersigned sent to each of you a letter notifying you of certain defaults that have occurred due to obligations that have not been met under the Guarantys, and demanding that Guarantors cure said defaults. To date, Guarantors have not cured the defaults outlined in the October 14, 2008 letter. Guarantors are hereby given further notice that the defaults set out in our October 14 letter, which are again detailed below, must be cured on or before <u>Monday, November 3, 2008</u>.

Under the January 2006 Guaranty, Guarantors guaranteed specific obligations on a recourse basis as set forth therein. In turn, under Section 2.1 of the June 2008 Guaranty, Guarantors (except for Kevin and Sharon McGraw) guaranteed the punctual and complete payment of base interest on the unpaid principal amount of the Mezzanine Loan at a rate of 12 percent per annum (the "<u>Base Interest Payments</u>") for the period commencing June 3, 2008 through and including December 1, 2009. Additionally, under Section 2.1 of the June 2008 Guaranty, Guarantors guaranteed the punctual and complete payment and performance of all payments to all suppliers of goods or services having claims against the Borrower ("<u>Borrower Liabilities</u>"). The Base Interest Payments and the Borrower Liabilities are collectively referred to in the Second Guaranty and in this letter as the "<u>Guaranteed Obligations</u>."

Please note that, as of September 30, 2008, the amount due and owing under the January 2006 Guaranty is $42,352. This amount is owed by Guarantors to Mezzanine Lender by virtue of Borrower's failure to pay certain vendors for the months of February through July 2008 when there was cash flow generated by the property and Brownfield reimbursements sufficient to pay the invoices submitted by such vendors, including: $28,221 in unpaid invoices for the month of February 2008; $910 in unpaid invoices for the month of March 2008; $1707 in unpaid invoices for the month of April 2008; $1436 in unpaid invoices for the month of May 2008; $2306 in unpaid invoices for the month of June 2008; and $7772 in unpaid invoices for the month of July 2008.

Please note further that, as of September 30, 2008, the amount of the Guaranteed Obligations under the June 2008 Guaranty is $180,417.99. This amount consists of $170,339.99 in Base Interest Payments due from June 3, 2008 through October 2008, including: $33,400.00 due for June 2008; $34,513.33 due for July 2008; $34,513.33 due for August 2008; $33,400.00 due for September 2008; and $34,513.33 due for October 2008. This amount further consists of $10,078.00 in Borrower Liabilities due from June 3, 2008 through July 2008, including $2306.00 for the month of June 2008; and $7772.00 for July 2008. Please make payment of the foregoing amounts to Mezzanine Lender on or before Monday, November 3, 2008, together with fees and costs incurred by the Mezzanine Lender, including attorneys fees, in the amount of $9961.00.

1708010.4

# Polsinelli

Shelten | Flanigan | Suelthaus

Scott A. Chappelle
Laura A. Chappelle
Evert Kramer, Jr.
Rosalind Kramer
Kevin T. McGraw
Sharon D. McGraw
October 22, 2008
Page 3

The total of the amounts itemized herein is $222,652.99. The amount owed to Lender is subject to increase as obligations continue to accrue under the January 2006 Guaranty and as additional Guaranteed Obligations are either quantified or continue to accrue under the June 2008 Guaranty. For instance, Mezzanine Lender has not yet quantified Borrower Liabilities for the months of August and September 2008, and, when those amounts are determined by Mezzanine Lender, they will be the subject of further demand. In addition, Base Interest will continue to accrue, and will be added to the Guaranteed Obligations by Mezzanine Lender on a monthly basis, in the following amounts:

in November 2008 in the amount of $33,400.00;
in December 2008 in the amount of $34,513.33;
in January 2009 in the amount of $34,513.00;
in February 2009 in the amount of $31,173.33;
in March 2009 in the amount of $34,513.33;
in April 2009 in the amount of $33,400.00;
in May 2009 in the amount of $34,513.33;
in June 2009 in the amount of $33,400.00;
in July 2009 in the amount of $34,513.33;
in August 2009 in the amount of $34,513.33;
in September 2009 in the amount of $33,400.00;
in October 2009 in the amount of $34,513.33;
in November 2009 in the amount of $33,400.00; and
in December 2009 in the amount of $34,513.33.

You are hereby further notified that any past or future negotiation between you or your representatives or agents on the one hand and Mezzanine Lender and its representatives or agents on the other do not and shall not constitute a waiver of Mezzanine Lender's right to exercise its rights and remedies at law or in equity. Any alleged waiver of any of Mezzanine Lender's rights shall not be effective unless in writing and duly executed by an authorized representative of Mezzanine Lender. You shall not be entitled to rely upon any oral statements made or purported to be made by or on behalf of Mezzanine Lender or its agents in connection with any alleged agreement by or on behalf of Mezzanine Lender to refrain from exercising any of Mezzanine Lender's rights.

Nothing set forth herein is intended, and shall not be deemed, to modify, limit, release, reduce or waive any of Mezzanine Lender's rights, remedies, and/or privileges, whether at law or in equity, all of which are hereby specifically reserved. Furthermore, the enumeration of any



## Polsinelli
Shelton | Flanigan | Suelthaus

Scott A. Chappelle
Laura A. Chappelle
Evert Kramer, Jr.
Rosalind Kramer
Kevin T. McGraw
Sharon D. McGraw
October 22, 2008
Page 4

specific default herein is not intended, and shall not be deemed, to waive other defaults that may currently exist under the Mezzanine Loan.

Your immediate attention to the matters addressed in this letter is appreciated. Thank you.

Sincerely,

Brett D. Anders   |by M-M

Brett D. Anders

BDA:mrm

cc:     McGraw & Eckhardt, PC
        1427 West Saginaw, Ste. 200
        East Lansing, MI 48823
        Attn: Thomas R. Eckhardt, Esq.

        James MacQueen (via e-mail)
        Frank Sasso (via e-mail)
        Alyson Cameron (via e-mail)
        Kathryn Louttit (via e-mail)
        Bill Bowman (via e-mail)
        Margie Keeley (via e-mail)
        Daniel Flanigan (via e-mail)
        Matt Moriarity (via e-mail)
        Marla Bell (via e-mail)

1708010.4

# Polsinelli
Shalton | Flanigan | Suelthaus

Scott A. Chappelle
Laura A. Chappelle
Evert Kramer, Jr.
Rosalind Kramer
Kevin T. McGraw
Sharon D. McGraw
October 22, 2008
Page 5

    bcc:    Robert Edwards (via e-mail)

1708010.4